BAKER ET AL. *v.* STATE
(Six Appeals in One Record)
[No. 170, October Term, 1953.]

*Decided June 23, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John W. Mitchell* for the appellants.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney Gen-*

44

*eral, Carlyle J. Lancaster, State's Attorney for Prince George's County,* and *Wilmer D. Pyles, Deputy State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The six appellants, ranging in age from fourteen to sixteen years, were brought before the Magistrate for Juvenile Causes for Prince George's County on January 19, 1954, charged, upon petitions of the Superintendent of Boys' Village of Maryland, as juvenile delinquents by reason of their escape from Boys' Village, to which they had each been committed as a juvenile delinquent by the Judge of the Circuit Court of Baltimore City, Division of Juvenile Causes. Jurisdiction was waived by the Magistrate, acting under Section 927 of Everstine's Code of Public Local Laws of Prince George's County (1953). This section was enacted by Chapter 913 of the Acts of 1947 which established a Juvenile Court for Prince George's County and defined its jurisdiction. The appellants waived indictment and informations were returned charging each with the crime of escape under Code (1951), Art. 27, Sec. 164. Each appellant, through counsel, filed a motion to dismiss on the ground that the information did not state an offense against the laws of Maryland. These motions were denied and the cases consolidated for trial. Each appellant pleaded not guilty and elected to be tried before the court without a jury. They were found guilty and each was sentenced to serve not more than three years in the Maryland State Reformatory for Males. From these judgments and sentences the appeals come here. The appellants were represented by the same counsel who tried the case below.

The only question presented is whether persons committed to Boys' Village as juvenile delinquents, and leaving without authority, could be charged with the crime of escape under Code (1951), Art. 27, Sec. 164. This section provides: "If any offender or person legally detained and confined in the Penitentiary, or Jail, or

House of Correction, or Reformatory, or Station House, or any other place of confinement, in this State, shall escape, he shall, on conviction thereof by the Criminal Court of Baltimore City or by the Circuit Court of the County in which the escape takes place, be sentenced to confinement in the Penitentiary, Jail or House of Correction for such additional period, not exceeding ten years, as the Court may adjudge. * * *'' Another clause fixed a similar penalty for aiding or assisting in an escape.

The appellants contend that the word "escape" must be construed in the light of its common law definition "where one under lawful arrest or imprisonment for criminal matter regains his liberty without being delivered by due course of law * * *''. *Hochheimer, Criminal Law* (2d Ed). Sec. 418. Since their commitments were not predicated on any adjudication of criminal liability, they contend the statute is inapplicable. This argument would seem to be completely answered by our recent decision in *Glickfield v. State,* 203 Md. 400, 404-405, where it was contended that the word "bribe" in the statute there considered must be limited to public officials according to its technical common law meaning. We held that there was a clear legislative intent shown "to create a new crime analogous to an old one." So here, the statute clearly includes not only unlawful escape by "an offender" but by any "person legally detained and confined" in the places enumerated, regardless of the cause of the detention. Code (1951), Art. 27, Sec. 743 declares Boys' Village of Maryland to be "a public agency of said State for the care and reformation of colored male minors committed or transferred to its care under the laws of this State." This language was repeated in the amendment made by Chapter 519, Acts of 1953. The appellants were legally detained by valid commitments at the time of their escape, even though they were not criminal offenders.

The appellants further contend that Boys' Village is not a "Reformatory * * * or other place of confine-

ment", within the meaning of Section 164. This argument overlooks the fact that the statute creating Boys' Village states that it is a place for "care and reformation". Indeed, it has been so described throughout its legislative history. See Chapter 392, Acts of 1870; Chapter 373, Acts of 1882; Chapter 70, Acts of 1937; Chapter 797, Acts of 1943; Chapter 692, Acts of 1949. It has been variously called "The House of Reformation and Instruction", "The House of Reformation", "Cheltenham School for Boys" and "Boys' Village", but all along the accent has been on education and training rather than punishment. Changes in management, including the recent transfer to the supervision and control of the Department of Public Welfare, and changes in the legal concept of Juvenile Causes, have not changed the fundamental nature of the institution. Since we hold that Boys' Village is a "Reformatory," within the plain meaning of the Statute, it is unnecessary to discuss whether it would nevertheless fall in the category of "any other place of confinement", under the rule of construction applied in *Martin v. State,* 203 Md. 66, 75.

The escape statute, as enacted by Chapter 320, Acts of 1837, mentioned only the penitentiary and was amended to include reformatories by Chapter 374, Acts of 1927. That Act, however, coupled the offense of an escape by an offender, or other person legally detained and confined, with the aiding or assisting in the escape by a keeper. It was to remove this ambiguity that Chapter 25, Acts of 1943 was enacted, setting up Section 164 in its present form. When the word "Reformatory" was used in the Act of 1927, the House of Reformation was operating under its original powers conferred in 1870. In *Jones v. House of Reformation,* 176 Md. 43, 45, this Court referred to it as a "reform school", and noted that in 1935 the inmates "numbered more than 400 colored boys committed to it by courts of criminal jurisdiction throughout the State * * *", although at that time it was still a privately managed corporation and the State had not acquired title to the property. The legislature, broadening the escape statute

in 1927, must have been aware of the fact that the House of Reformation would naturally fall within its scope. There is no indication in any later act of an intention to narrow the definition.

The places enumerated in Section 164, escape from which is made subject to the penalty prescribed, include "Station House" and "Reformatory", whereas the places to which escapers may be sentenced to confinement are specified as "the Penitentiary, Jail or House of Correction." This would seem to indicate a legislative policy that after an escape the persons escaping should be sent to a place of greater security. It may also be noted that persons may be legally detained in a Station House even though not yet convicted of any offense. The words "sentenced to confinement * * * for such additional period * * * as the court may adjudge * * *" refer primarily to cases where a previous period of confinement has been fixed, but it does not follow that the imposition of a sentence for escape from confinement in the places enumerated is contingent upon a previous sentence. In the instant case, the commitments were indeterminate and subject to further order of court, which might run until the persons committed severally reached the age of twenty-one years. We think the sentences have the effect of setting aside these commitments and run from the date of sentence.

No question is raised as to the propriety of the Magistrate's exercise of the power to "waive jurisdiction and order the person before him held for action under regular criminal procedure." The same statute which created the shield for juvenile offenders also contained this express power to remove it. We cannot assume that the Magistrate acted without good cause in waiving jurisdiction, nor can we assume that the court's action in imposing sentence was unwarranted by his pre-sentence investigation. The court had jurisdiction to act and the motions to dismiss the informations were properly overruled.

*Judgments affirmed, with costs.*