## STATE BOARD OF PUBLIC WELFARE ET AL. *v.* MYERS, MINOR, ETC.

[No. 162; September Term, 1960.]

*Decided February 7, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert C. Murphy, Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellants.

*Tucker R. Dearing* and *Juanita Jackson Mitchell,* with whom were *Thurgood Marshall, Jack Greenberg* and *Dearing & Toadvine* on the brief, for the appellee.

Brief *amicus curiae* filed by Maryland Petition Committee, Inc. *George Washington Williams* and *C. Maurice Weidemeyer* on the brief.

HENDERSON, J., delivered the opinion of the Court.

On February 26, 1960, Myers, a Negro boy thirteen years of age, by his mother and next friend, on behalf of himself and others similarly situated, filed a bill of complaint in the Circuit Court of Baltimore City for declaratory relief against the State Board of Public Welfare and the Boards of Managers of Maryland Training School, Boys' Village, Montrose School for Girls, and Barrett School for Girls. The appellees filed demurrers and answers to the bill. The case was set for hearing, testimony was taken, and the chancellor passed a declaratory decree.

The Department of Public Welfare has the general supervision of all four schools, under Chapter 797, sec. 17, Acts of 1943 (Code (1960 Supp.), Art. 88A, sec. 33). The bill alleged that Code (1957), Art. 27, secs. 657 and 659 are unconstitutional insofar as the Boys' Village and the Maryland Training School are declared to be public agencies of the State "for the care and reformation of colored male minors committed or transferred" thereto and "for the care and reformation of white male minors * * * committed thereto", respectively. There was a similar prayer as to the two girls' schools, involving secs. 660 and 661. The appellee contends and the chancellor agreed that these sections established racially segregated training schools for the detention and training of delinquent minors committed thereto. The appellants concede that segregation is mandatory or at least that it has been invariably observed in practice. The chancellor held that insofar as the sections required a separation of the two races in those schools, they were in violation of the Fourteenth Amendment of the United States Constitution, and hence invalid and unenforceable, and entered a declaration to that effect, applicable to all four schools. The defendants appealed here.

It was shown at the hearing below that Myers had been adjudged to be a delinquent child by the Circuit Court of Baltimore City, Division of Juvenile Causes, on October 28, 1959, acting under the authority conferred by sec. 249 of the Charter and Public Local Laws of Baltimore City (1949 ed.). At that time he was ordered detained at Boys' Village "sub curia as to final disposition." The record shows that his

detention was extended by successive orders until July 6, 1960, when he was discharged from detention at Boys' Village and committed to the Maryland Training School.

At the time of the determination of delinquency the judge announced his intention to commit Myers to a training school since he was on probation at the time for previous thefts. Counsel for Myers then moved that he be sent to Maryland Training School rather than to Boys' Village where Negro boys in his situation have always been committed. It was conceded, and later stipulated, that the tangible and physical facilities of the two schools are substantially equal. Both provide cottage type housing and educational instruction substantially equivalent to that offered in the public schools. Counsel for Myers maintained that Boys' Village could not provide him with rehabilitation and educational training equal to that provided at Maryland Training School because the former is racially segregated. Judge Moylan, sitting in the Juvenile Division, took no action upon the motion at that time but held the matter *sub curia.* He heard the declaratory judgment case then filed in the equity court. On the same day that he passed the declaratory decree, July 6, 1960, he in effect granted the pending motion in the Juvenile Division and passed an order committing Myers to the Maryland Training School "subject to further order of this court." No appeal was taken from that order. Nor was any application for a stay of the order made to the trial court or to the Court of Appeals.

It was suggested at the argument that the case may have become moot upon the passage of the order of commitment to the Maryland Training School. That action would have been appealable under section 255 of the Charter and Public Local Laws of Baltimore City (1949 ed.), the local law applicable to Juvenile Causes in Baltimore City, which provides that "Any interested party aggrieved by any order or decree of the Judge, may, within thirty days after the entry of such order or decree, appeal therefrom to the Court of Appeals." This section further provides that "The pendency of any such appeal * * * shall not suspend the order of the Judge regarding such child, * * * unless the Court of Appeals shall so

order." Obviously, the final order of commitment superseded the temporary orders of detention while the matter was held *sub curia*. The failure to appeal or seek a stay would seem to preclude an attack upon the final order by the appellants.

In *Doremus v. Board of Education*, 342 U. S. 429, 433, an appeal to the United States Supreme Court was dismissed because the child, whose parents objected to Bible reading in a New Jersey public school, had graduated after the appeal was noted. Mr. Justice Jackson, for the Court, observed that "this Court does not sit to decide arguments after events have put them to rest." Recent Supreme Court cases have applied the same general principle. See *Oil Workers Unions v. Missouri*, 361 U. S. 363, 367; *Parker v. Ellis*, 362 U. S. 574, 575. For similar holdings in Maryland under comparable factual situations, see *Public Ser. Com'n v. Chesapeake & Potomac Tel. Co.*, 147 Md. 279, *Lloyd v. Bd. of Sup'rs of Elections*, 206 Md. 36, 39, and *Lake Falls Ass'n v. Bd. of Zon. Appeals*, 209 Md. 561, 564.

We think the cases cited are distinguishable. In *Moquin v. State*, 216 Md. 524, 531, we held that an order of commitment could be revoked even though the purpose of the revocation was to waive jurisdiction and require the delinquent to stand trial in the criminal court. It would seem that in the event of a reversal by this Court of the declaratory decree as to the constitutionality of the segregation statute, the trial court would possess the power to rescind the order of commitment, and might even be obliged to do so. The statute indicates that this Court has the power to suspend the operation of the trial court's decree, at least upon timely application. Thus the question is not necessarily academic.

We may also note, although we leave the question open, that as pointed out in the *Lloyd* case, *supra* at p. 42, many courts regard the doctrine of mootness as a rule of decision rather than a question of jurisdiction and hold that where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, a departure from the general rule and practice of not deciding academic questions may be justified. Cf. *Avery v. Wichita Falls Independent School Dist.*, 241 F. 2d 230 (5th Cir.), cert. denied, 353 U. S. 938.

Another preliminary question is presented by the record concerning the appellee's standing to sue or interest in the subject matter as against one or more of the parties defendant. The fact that the question was not raised below, or even in this Court, is not controlling. See *Kreatchman v. Ramsburg,* 224 Md. 209, and cases there cited. It is well settled that this Court does not decide constitutional questions in the abstract or at the instance of persons without standing to sue. *Hammond v. Lancaster,* 194 Md. 462, 471 (motion to stay denied, 339 U. S. 908); *State v. Cherry,* 224 Md. 144. Cf. *Tanner v. McKeldin,* 202 Md. 569, 580. The cases indicate that the necessity of standing is not obviated by seeking relief in the form of a class action. It seems clear that Myers has no standing to attack the State policy in regard to the operation of the reform schools for girls, for he is not eligible for admission to either on account of his sex. It is not contended that segregation according to sex is unconstitutional, whatever psychological harm he may suffer thereby. Nor do we think that Myers has shown any standing in the instant case to ask for a declaration against the Boys' Village or how such a declaration could be made presently effective to admit white children. As we see it, the only necessary parties defendant are the Board of Managers of the Maryland Training School and the State Board of Public Welfare, which has general supervision over the Maryland Training School. As to them, there was really no occasion for a declaratory decree. The matter being already at issue in a pending case, they might well have been brought in as parties. But the existence of another remedy is not a bar to declaratory relief. There is a justiciable controversy, and we think Myers has standing as against the Maryland Training School and its supervisory boards to raise the issue that his exclusion is based solely upon race. We take it that his exclusion on any other ground would be valid if done in good faith and not as a pretext to avoid constitutional limitations. Cf. *Shuttlesworth v. Birmingham Board of Education,* 162 F. Supp. 372 (N. D. Ala.), aff'd 358 U. S. 101. However, the trial judge, in his extended opinion, did not find or suggest any other ground, and his order of commitment points to the same conclusion.

We come, then, to the merits of the case. The United States Supreme Court, in *Brown v. Board of Education*, 347 U. S. 483, flatly stated that in the field of public education the doctrine of "separate but equal" has no place and that separate educational facilities are inherently unequal. While *Plessy v. Ferguson*, 163 U. S. 537, was not expressly overruled, the basic rationale of that decision was repudiated. The holding was that the plaintiffs, Negro children denied admission to formerly all white public schools solely on account of their race or color, and others similarly situated, were deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment. On rehearing, in 349 U. S. 294, the Court declared that all federal, state or local laws permitting such discrimination must yield to the announced principle. In *Bolling v. Sharpe*, 347 U. S. 497, it was held that racial segregation in a public school in the District of Columbia was not reasonably related to any proper governmental objective and was violative of due process. See also *Cooper v. Aaron*, 358 U. S. 1, and note, 3 L. Ed. 2d 1556.

There can be no doubt the principle extends to public education at all levels and not merely to public day schools. See *Frasier v. Board of Trustees*, 134 F. Supp. 589 (M. D. N. C.), aff'd 350 U. S. 979. It has been extended to public parks and bathing beaches, operated by a state or a municipal corporation. See *Dawson v. Mayor and City Council of Baltimore City*, 220 F. 2d 386 (4th Cir.), aff'd 350 U. S. 877, where it was held that exclusion solely because of race or color could not be justified under the police power, whether attendance was compulsory or optional. See also *Browder v. Gayle*, 142 F. Supp. 707 (M. D. Ala.), aff'd 352 U. S. 903, extending the principle to public transportation by a carrier operating under state authority.

Recognizing the binding effect of the Supreme Court cases cited as the supreme law of the land, the appellants seek to differentiate them on the ground that the State's training schools for delinquent minors are places of detention, analogous to prisons, although the accent is on education and training rather than punishment. Cf. *Baker v. State*, 205 Md. 42, 46, and *Moquin v. State, supra*. See also *Roth v. House of*

*Refuge,* 31 Md. 329, 334. They argue that segregation is permissible in prisons, although, as the trial court pointed out in the instant case, our prisons have never been segregated. They rely strongly upon *Nichols v. McGee,* 169 F. Supp. 721 (N. D. Cal.), appeal dismissed 361 U. S. 6. In that case a Negro inmate of the California State prison under a sentence for attempted armed robbery filed a proceeding in the Federal District Court complaining that the prison authorities, under prison regulations although not by virtue of any statute, required him to eat with other Negroes and to occupy a cell in a cell block reserved for Negroes. The District Court held that the failure to show that he had sought relief in the State courts was a fatal objection to the bill. The District Court further remarked that "By no parity of reasoning can the rationale of *Brown v. Board of Education, supra,* be extended to State penal institutions where the inmates, and their control, pose difficulties not found in educational systems." This statement was not necessary to the decision, and we therefore assume that the dismissal of the appeal by the Supreme Court did not imply approval of the statement quoted. In the case of *United States v. Radio Station WENR,* 209 F. 2d 105 (7th Cir.), the court dismissed a claim that a Negro inmate of a state prison was denied constitutional rights because the prison management did not allow Negroes to participate in certain radio broadcasts. The court indicated that this was within the ambit of prison management, with which the Federal Courts are loath to interfere.

But if we assume, without deciding, that the distinction between penal institutions and public schools is tenable, it does not follow that educational programs offered in the training schools may be on a segregated basis. Section 249 of the Charter and Public Local Laws of Baltimore City (1949 ed.) provides that "No adjudication by the Judge [in Juvenile Causes] upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication." Deprivation of a constitutional right, enjoyed by other Negro children compelled by state action to attend a regular public school, might well be described as a civil disability.

Moreover, the record makes it clear that educational pro-

grams offered in the training schools are substantially the same as those offered in the regular public schools. The trial judge in the instant case found as a fact, from the evidence submitted, that these programs are so closely patterned after those in the public schools that a child, when his scholastic grades and credits are earned, "can usually return to his former school in his neighborhood * * * without academic difficulty." The judge stated that the training schools are "basically schools, and not custody-centered institutions with education secondary." In support of his conclusion that they are "a part of the State's public education system," he pointed out that there are some public schools in Maryland that admit only special groups of problem or handicapped children. He also referred to the fact that by Chapter 29 of the Acts of 1922, the Maryland Training School was placed under the general supervision of the Department of Education, and its transfer to the Department of Welfare in 1943 did not alter its basic character.

On the other hand, it is true that detention in a training school is designed to protect the community from anti-social conduct, and not solely to benefit those committed through education. The Attorney General argues, with some support in the record, that the plan of group residence in cottages, under a housemaster, simulates home life with a father as closely as possible. There is a widespread belief that delinquency is usually due to a faulty parent-child relationship. It is argued that this rehabilitory plan would be frustrated if race separation is disregarded. However that may be, we think the Supreme Court cases declare that the Fourteenth Amendment is a bar to separation according to race, in educational facilities offered by the State, without regard to the type of school.

In view of what we have said in regard to Myers's standing to sue, we think the decree appealed from should be modified so as to apply only to the Board of the Maryland Training School and the Board of Public Welfare. As modified, we shall affirm the decree.

> *Decree modified, and as modified, affirmed, costs to be paid by the appellants.*