**Terri Marie CRUM, Etc., et al., Plaintiffs-Appellants,**

v.

**STATE TRAINING SCHOOL FOR GIRLS et al., Defendants-Appellees.**

**No. 27058.**

United States Court of Appeals
Fifth Circuit.

July 10, 1969.

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, James M. Nabrit, III, Sheila Rush Jones, Franklin E. White, Michael Meltsner, New York City, for appellants.

Maurice F. Bishop, Birmingham, Ala., MacDonald Gallion, Atty. Gen. of Ala., Gordon Madison, Leslie Hall, Asst. Attys. Gen. of Ala., Montgomery, Ala., for appellees.

Before WISDOM and DYER, Circuit Judges, and KRENTZMAN, District Judge.

WISDOM, Circuit Judge:

 This class action seeks to desegregate (1) The Alabama Boys Industrial School, (2) The State Training School for Girls, and (3) The Alabama Industrial School for Negro Children. These are the three reform schools the State of Alabama maintains for delinquent children. On August 2, 1968, the district court ordered the two schools for white children to submit a desegregation plan within sixty days after the decree, but allowed the Negro school one year in which to submit a plan. On October 4, 1968, the district court approved the plans of the two white schools. We reverse both orders. The state's duty to dismantle the dual system of segregated schools applies to reform schools as well as to public schools.

**I.**

Children between the ages of 12 and 18 are committed to the three defendant

institutions by the juvenile courts of the state of Alabama after a finding by the judge of the Juvenile Court having jurisdiction that such children are delinquent. White boys from any of Alabama's 67 counties are sent to the Alabama Boys Industrial School. White girls are sent to the State Training School. Both Negro boys and girls are sent to the Alabama Industrial School for Negro Children. At the time of the hearing there were no staff members of the opposite race in the schools.

(1) The State Training School for [White] Girls has facilities for 78 girls, and at the time of the hearing had exactly that number. The Superintendent testified that a cottage was then in the process of being renovated which would make room for 20 more girls after October 1st 1968. There are a number of cottages in which each girl has an individual private room. The girls share bathroom facilities, recreational facilities, and all the students eat together. The school provides academic schooling up to the 9th grade. For older girls a program is available for the high school equivalency diploma. The State Department of Education provides psychiatric consultation; the University of Alabama Language Development Center provides a reading program; the state provides medical care, dental care, recreation, and work programs. The rehabilitation rate is good. Mrs. Weiss, the Superintendent, received a Masters degree from Western Reserve University in Cleveland, Ohio and has been in social work for 34 years.

(2) The Alabama [White] Boys Industrial School had, at the time of the hearing, an enrollment of 200 boys, with a capacity for 214. The average length of stay for a boy is 10 months. The School offers academic programs for the 1st through the 10th grade. Most of the children have sub-normal intelligence (the average I.Q. is 89). The school has a bus which they use to take the students to cultural events. There is a school band, and a school newspaper. Mr. John Carr, Superintendent of the Alabama Boys Industrial School, has a Masters degree in Social Work from Columbia University in New York.

(3) The Alabama Industrial School for Negro children is inferior in every way to the two other schools. Its principal activity is raising cucumbers. The school, which enrolls both boys and girls, is bursting at the seams. At the time of the hearing, the school had an enrollment of 460—106 girls and 357 boys—in a school with a capacity of only 300. Academics are not stressed: many of the children have never been to school before, and textbooks are not donated by the state but must be purchased from the school's already inadequate budget. Boys and girls live in separate dormitories, all of which have double beds. All 106 girls live in a single building, which was built to house 80 students. There are 14 teachers for 460 students. One group goes to school for six days while the other group is out farming, and the groups then alternate. This school, in contrast to the white institutions, does not have a single welfare worker. Mr. E. B. Holloway, Superintendent of the School was the Farm Director of the School before being promoted to Superintendent.

On these facts, the Negro school would flunk the Plessy v. Ferguson test. Its overcrowded condition and plainly inferior facilities are enough in themselves to require the immediate and simultaneous desegregation of all three schools.

## II.

The white school for boys filed a desegregation plan that is clearly inadequate. It provided for admission of four Negroes of about the same age and size, to be assigned to the same cottage at the end of a twelve-day orientation period. Then, at some undesignated period, two Negro students would be admitted in each orientation period. Future vacancies on the staff would be filled regardless of race, color, or creed.

The plan submitted by the school for white girls provides nothing more than

general statements that, in the future, the school will accept applications of Negro students on the same basis as applications of white students.

The Negro school has not yet filed a desegregation plan. Presumably, it would accept Negroes from 38 of the 67 counties in the state, the southern counties; the Boys Industrial School would accept Negroes from the other 29 counties.

### III.

It is clear that a state may not constitutionally require the segregation of public facilities. Singleton v. Board of Commissioners of State Institutions, 5 Cir. 1966, 356 F.2d 771, 772 held that reformatories fell within the principle of Brown:

> Twelve years ago, in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 * * * the Supreme Court effectively foreclosed the question of whether a State may maintain racially segregated schools. The principle extends to all institutions controlled or operated by the State.

Similarly in State Board of Public Welfare v. Myers, 224 Md. 246, 167 A.2d 765, the Court of Appeals citing *Brown*, ordered the desegregation of Maryland training schools. Arkansas training schools were ordered to desegregate their facilities in Board of Managers etc. v. George, 8 Cir. 1967, 377 F.2d 228. In Washington v. Lee, M.D. Ala. 1966, 263 F.Supp. 327, aff'd 1968, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212, the district court ordered that the defendant Frank Lee as Commissioner of the Board of Corrections for the State of Alabama, his successors in office, agents, servants and employees, take the necessary and appropriate steps to desegregate immediately the several honor farms, the educational programs, the youth centers and the hospitals in the state penal system.

### IV.

We remand the case to the district court with the following instructions:

1. The three schools should be directed to coordinate their planning and to present one plan for the system as a whole that will accomplish *immediate* and total desegregation of each school. The order should provide that the plan be submitted to the district court not later than August 15, 1969. The court should promptly hold a hearing on the plan at which the plaintiffs will have an opportunity to present objections and to suggest amendments.

2. The district court should require the plan to provide for integration of classrooms, dormitories, athletic programs, and all activities, and services. The faculty must be integrated without waiting for the filling of vacancies on a non-racial basis. The pattern of teacher assignment to any particular school should not be identified as tailored for a heavy concentration of either negro or white pupils in the school. Professional and non-professional members of the staff must be integrated.

3. We bear in mind that these schools are reform schools for delinquents. The school authorities therefore, in good faith, may take into account racial tensions in maintaining discipline and good order in the three institutions, provided that the authorities do so without racial discrimination. For example, one of the schools may be restricted to girls; the two others may be restricted to boys, one to take the younger boys, the other to take the older boys.

4. The plan should provide for periodic reports to the district court until such time as the district court should decide that the dual system has been completely replaced by a unitary, integrated system.

### V.

The district court dismissed as a party defendant the Honorable G. Ross Bell, Judge of the Juvenile Court. There is no doubt that the Juvenile and

Domestic Relations Court and Judge G. Ross Bell were properly named as defendants. Under Alabama law, it is the Juvenile Court that assigns delinquents to the Industrial Schools. See Board of Managers, etc. v. George, 8 Cir. 1967, 377 F.2d 228. We feel certain however that after the defendant schools have agreed on a plan approved by the district court, that the Juvenile Court will cooperate with the schools. Accordingly, we consider it unnecessary at this time to rule on the district court's dismissal of the complaint as to Judge Bell.

The orders appealed from are reversed. The case is remanded to the district court for further proceedings consistent with this opinion. The mandate shall issue immediately.