482 A.2d 490

**Robert Thomas FLEEGER**

v.

**STATE of Maryland.**

**No. 24, Sept. Term, 1983.**

Court of Appeals of Maryland.

Oct. 22, 1984.

156

Louis P. Willemin, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Jane E. Pilliod, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON *, RODOWSKY and COUCH, JJ.

COLE, Judge.

The issue presented in this case is whether the appellant is entitled to have his pre-escape custody credited against his sentence for the offense of escape.

The facts are not in dispute. On July 6, 1981, Robert Thomas Fleeger was placed in custody in the Cecil County Jail on a charge of theft. He remained in jail awaiting trial because of his inability to post bail. On December 25, 1981, Fleeger escaped from jail and appropriated an automobile that was left unattended with its motor running. Fleeger abandoned the automobile after driving it for approximately ten miles. A warrant for his arrest charging him with escape was issued the same day. Police captured Fleeger on December 26, 1981, and returned him to the Cecil County Jail pending further proceedings.

On January 13, 1982, the Deputy State's Attorney for Cecil County filed a criminal information charging Fleeger with escape under Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 139, and unauthorized use of a vehicle under § 349 of Art. 27. In accordance with a plea agreement, the State nol prossed the original charge of theft in exchange for Fleeger's guilty plea to escape and unauthorized use of a vehicle. The Circuit Court for Cecil County accepted this plea agreement on January 18, 1982, and sentenced Fleeger

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

on March 5, 1982, to six years' imprisonment for escape and three years' imprisonment for unauthorized use of a vehicle, the sentences to run concurrently. Although the trial court granted Fleeger credit against this sentence for his post-escape, pre-sentence custody (December 26, 1981, to March 5, 1982), it refused to give him credit for his pre-escape custody (July 6, 1981 to December 25, 1981).

The Court of Special Appeals affirmed Fleeger's conviction and sentence in an unreported per curiam opinion filed on December 29, 1982. The intermediate appellate court rejected Fleeger's contention that the trial court should have given him credit for both his pre- and post-escape custody by virtue of the statute governing the awarding of credit against a sentence for time spent in custody, § 638C of Art. 27. That court held that § 638C does not require mandatory credit for pre-escape custody. In basing its holding on § 139 of Art. 27, which provides that an escape sentence must be consecutive to the sentence under which the inmate was originally confined, the Court of Special Appeals reasoned that § 638C is "inapplicable to a sentence imposed for an escape." We granted certiorari in this case to resolve the question presented.

I

Section 638C of Art. 27, originally enacted in 1974, is a comprehensive provision governing the awarding of credit against a sentence for time spent in custody. This statute contains four subsections that address various contexts in which a defendant may receive credit against a valid conviction for time spent in custody. Subsection (a), the portion relevant in this appeal, embodies two mandatory provisions and one discretionary provision. Subsection (a) provides in full:

(a) *Credit for time spent in custody before conviction or acquittal.*—Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms of an indeterminate sentence for all time

spent in the custody of any state, county or city jail, correctional institution, hospital, mental hospital or other agency as a result of the charge for which sentence is imposed or as a result of the conduct on which the charge is based, and the term of a definite or life sentence or the minimum and maximum terms of an indeterminate sentence shall be diminished thereby. In any case where a person has been in custody due to a charge that culminated in a dismissal or acquittal, the amount of time that would have been credited against a sentence for the charge, had one been imposed, shall be credited against any sentence that is based upon a charge for which a warrant or commitment was lodged during the pendency of such custody. In all other cases, the sentencing court shall have the discretion to apply credit against a sentence for time spent in custody for another charge or offense. This section does not apply to a parolee who is returned to the custody of the Division of Correction as a result of a subsequent offense and is incarcerated prior to the date on which he is sentenced for the subsequent offense.

Art. 27, § 638C(a). The first sentence of subsection (a) deals with those situations where a defendant is in custody before trial and is subsequently convicted on the charge for which he was held. Under this provision, time spent in custody prior to the imposition of sentence must be credited against the sentence imposed. The second sentence governs those situations where a defendant is held in custody on a charge, and during the pendency of that custody a warrant or commitment is lodged against him. If the original charge is dismissed or the defendant is acquitted, but the defendant is subsequently convicted upon the charge for which the warrant or commitment was lodged against him, this passage mandates that the defendant receive credit for the time spent in custody on the first charge. The discretionary provision under subsection (a), set forth in the third sentence, states that "[i]n all other cases" the trial "judge shall have the discretion to apply

credit against a sentence for time spent in custody for another charge or offense."

Clearly, the first sentence of subsection (a) is not dispositive of whether Fleeger is entitled to credit for his pre-escape custody. This provision merely directs that Fleeger receive credit for his post-escape, pre-sentence custody, *i.e.*, from December 26, 1981 (date Fleeger was placed in custody for escape) to March 5, 1982 (date of sentencing). The third sentence of subsection (a) is likewise not dispositive of this issue because it is limited to discretionary credit, not mandatory credit. Thus, the issue of whether Fleeger is entitled to mandatory credit under § 638C narrows to the second sentence of subsection (a).

The second sentence of subsection (a) indicates that a defendant must satisfy two conditions prior to receiving mandatory credit under this provision: (1) the first charge must culminate in a dismissal or acquittal, *and* (2) the sentence for which credit is sought must be based upon a charge for which a warrant or commitment was lodged during the pendency of the custody on the original charge.

█ In analyzing these two conditions, the first issue is whether a *nolle prosequi* on the original theft charge constitutes a dismissal within the meaning of the credit statute. We defined *nolle prosequi* in *State v. Moulden,* 292 Md. 666, 441 A.2d 699 (1982), in the following terms:

> The nol pros of a charging document or of a count is a "final disposition" of the charging document or count; "there can be no further prosecution under" the nol prossed charging document or count; the matter is "terminated" at that time; and the accused may be proceeded against for the same offense only under a new or different charging document or count.

*Id.* at 673, 441 A.2d 699 (quoting *Barrett v. State,* 155 Md. 636, 637–38, 142 A. 96 (1928)). The State argues that a prosecutorial *nolle prosequi* is not a dismissal because a court has the sole authority to enter a dismissal. The State further argues that a dismissal, unlike a *nolle prosequi,* is

a judicial recognition that either no charge should have been brought or that it was factually unfounded. We are unpersuaded by this logic. In the case *sub judice* the State entered a *nolle prosequi* on the original theft charge in exchange for guilty pleas as to the escape and unauthorized use charges. Provided Fleeger complies with the terms of the plea agreement, the State cannot reinstitute the original theft charge. Under these circumstances, we view the *nolle prosequi* as effectively tantamount to a dismissal. *See State v. Brockman*, 277 Md. 687, 357 A.2d 376 (1976) (State precluded from withdrawing plea bargain where withdrawal is unfair or inequitable to the defendant; consequently, State cannot prosecute defendant on charges *nol prossed* in accordance with plea agreement); *Magrogan v. State*, 56 Md.App. 289, 292–93, 467 A.2d 784 (1983) (*nolle prosequi* entered on housebreaking indictment as part of a plea agreement is effectively tantamount to dismissal because the State cannot reinstitute the charges as long as the defendant complies with the terms of the agreement); *cf. Roberts v. State*, 56 Md.App. 562, 468 A.2d 410 (1983) (because a stet is not a dismissal or acquittal, defendant was not entitled to have time spent in custody on stetted handgun charge credited against his sentence for probation violation under § 638C(a)), *cert. denied*, 299 Md. 426, 474 A.2d 219 (1984).

The second condition under § 638C(a) provides that time spent in custody awaiting trial on the charge that culminates in a dismissal or acquittal must be credited to any subsequent sentence based upon a charge for which a "warrant or commitment was lodged during the pendency of such custody." This provision makes clear that mandatory credit is contingent on a warrant or commitment being lodged against a defendant while he is in custody on another offense. The dispositive term in this sentence is the verb "lodge." To "lodge" a warrant or commitment means "to lay or deposit before a proper authority or person," *Webster's Third New International Dictionary* 1329 (1981), or to "file or leave [documents] with the appropriate official."

2 *Jowitt's Dictionary of English Law* 1115 (2d ed. 1977). Logically, a warrant or commitment can be lodged against an escapee only after he is recaptured and returned to his original place of custody. The lodging of a warrant or commitment acts as a detainer because it puts the custodian on notice that other charges have been placed against the escapee. Significantly, the crediting statute does not use the word "issue" in lieu of "lodge." These terms, as the General Assembly recognized are not synonymous. Indeed, "issue" means "[t]o send out [or] to send out officially," *Black's Law Dictionary* 745 (5th ed. 1979), or "the act of officially putting forth or getting out ... or proclaiming or promulgating." *Webster's Third New International Dictionary* 1201 (1981).

Here, Fleeger escaped from the Cecil County Jail on December 25, 1981. Later that day a warrant was issued for his escape. After his return to custody on December 26, the authorities lodged a commitment against him on the following day, December 27. Because the commitment was lodged during the pendency of Fleeger's original custody, we conclude that Fleeger falls within the precise wording of the mandatory provision under the credit statute.

 The State seeks to avoid the effect of this conclusion by arguing that granting credit to Fleeger for his pre-escape custody under § 638C(a) is inconsistent with the purpose of that statute. The State correctly notes that one purpose of the credit statute is to avoid "banked time," which is a reserve of time established when a defendant spends time in custody that is not yet but may be credited against a valid sentence. Credit statutes are designed to avoid the obviously undesirable effect of permitting a defendant to "bank" time before he commits a new offense. *See Standards Relating to Sentencing Alternatives and Procedures* 196 (American Bar Association Project on Minimum Standards for Criminal Justice 1968) [hereinafter cited as *ABA Standards*]; *see also Bauers v. Yeager,* 261 F.Supp. 420, 424 (D.N.J.1966) (discussing "banked" time).

Indeed, the possibility that an accumulated reserve of time could be used to offset a sentence for a future, yet uncompleted crime would destroy the deterrent value against the commission of such a crime. Maryland's credit statute, however, minimizes the banked time problem by restricting credit to those cases where a warrant or commitment is lodged against a defendant while in custody on another charge, and the original charge culminates in a dismissal or acquittal. Under these narrowly tailored provisions, a defendant who escapes from custody cannot be certain that he can apply the time he spent in pre-sentence custody against any sentence received upon a post-escape offense because at the time of his escape he still has a viable charge pending against him. Under the second sentence of § 638C(a), a defendant is entitled to this credit only if, *inter alia,* the original charge culminates in a dismissal or acquittal. At the time of his escape, the defendant ordinarily has no idea as to whether the original charge will culminate in an acquittal or dismissal. Thus, the defendant cannot be confident that he can apply the time spent in pre-escape custody against any sentence received on a post-escape offense. The statute therefore avoids the undersirable situation where a defendant can commit an offense with full knowledge that he has a reservoir of time to apply against it.

In the case *sub judice,* Fleeger escaped while in custody on the original theft charge. At that time there had been no disposition of the charge; rather, Fleeger was aware that the charge was viable and that the prosecutors were determined to secure a conviction on that charge. Not until approximately one month after his capture did Fleeger enter into a plea agreement with the State whereby the State agreed to nol pros the original theft charge. It was at this moment that Fleeger became entitled to credit for his pre-escape custody because the two conditions under § 638C(a) were met. Thus, contrary to the State's assertions, this is not a banking time case. That Fleeger received credit for his pre-escape custody against an offense committed after his original custody is not determinative of

whether Fleeger is banking time. Instead, the determinative factor is whether Fleeger satisfies the precise conditions of the mandatory credit provision established by the General Assembly. In short, Fleeger's ability to satisfy these conditions precludes any argument that he is banking time in contravention of § 638C(a).

■■■ Another purpose of the credit statute is the elimination of "dead" time, which is time spent in custody that will not be credited to any valid sentence. *See* Schornhorst, *Presentence Confinement and the Constitution: The Burial of Dead Time*, 23 Hastings L.J. 1041 (1972); *Right to Credit for Time Spent in Custody Prior to Trial or Sentence*, 77 A.L.R.3d 182 (1977). Section 638C(a) seeks to avoid dead time by authorizing mandatory credit for any time spent in custody while awaiting trial on an offense for which the defendant is ultimately convicted. The statute also seeks to eliminate dead time that results when a defendant is in custody on one crime but is ultimately convicted of another. By enacting § 638C(a), the General Assembly sought to ensure that a defendant receive as much credit as possible for time spent in custody as is consistent with constitutional and practical considerations. An obvious corollary is that the General Assembly sought to minimize the amount of dead time. Simply stated, we believe that no legitimate legislative policy is advanced by maximizing dead time or by withholding credit that is due a defendant under the crediting statute. Under the facts of this case, Fleeger does not have to suffer the unfairness of dead time because he is entitled to receive credit for his pre-escape custody. We hold, therefore, that the trial court erred in refusing to grant Fleeger credit for the time that he spent in pre-escape custody.

## II

■■ Fleeger raises a second general argument that Maryland's escape statute, § 139 of Art. 27, does not apply to his

case. Section 139(a), the provision relevant in this case, provides in full: [1]

(a) If any offender or person legally detained and confined in the penitentiary or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, escapes he shall be guilty of a felony and on conviction by the Criminal Court [now Circuit Court for] of Baltimore City or by the circuit court of the county in which the escape takes place, be sentenced to confinement in the penitentiary, jail or house of correction for whatever additional period, not exceeding ten years, as the court may adjudge. The sentence so imposed shall be consecutive to the sentence under which the inmate was originally confined and may not be suspended. However, for escapes from any juvenile institution which have not involved an assault, the sentence may not exceed confinement for three years.

Fleeger points to the penultimate sentence of § 139(a), which states that a sentence for escape "shall be consecutive to the sentence under which the inmate was originally confined." Using this language as his lodestar, Fleeger argues that because he had not been serving a sentence for any criminal conviction at the time of his escape, there is no sentence onto which his escape sentence must be made

---

1. This statute was subsequently amended by the General Assembly in 1983 and 1984. The statute now reads:

(a)(1) If any individual who is legally detained in the State penitentiary or a jail, house of correction, reformatory, station house, or other place of confinement in this State or who is committed to the Drug Abuse Administration for examination or inpatient treatment escapes, the individual is guilty of a felony and on conviction by the circuit court for the county in which the escape takes place, is subject to confinement in the State penitentiary or a jail or house of correction for an additional period not exceeding 10 years. The sentence imposed under this subsection shall be consecutive to any sentence which was being served at the time of the escape, or any sentence which had been imposed but was not yet being served at the time of sentencing on the escape. A sentence imposed under this subsection may not be suspended.

consecutive. Thus, Fleeger maintains that § 139(a) is inapplicable. We agree.

The consecutive sentencing provision under § 139(a) is clear and unambiguous in stating that the sentence for escape "shall be consecutive to the *sentence* under which the inmate was originally confined." (emphasis supplied). The use of the word "sentence" demonstrates that the General Assembly intended that this provision apply only when a defendant escapes while serving a sentence on a prior criminal conviction. In short, this provision presupposes a sentence based upon a valid criminal conviction. *See Kaylor v. State,* 285 Md. 66, 400 A.2d 419 (1979). The reason for using this particular language is predicated on the underlying purpose of the escape statute: deterrence. The General Assembly sought to deter escapes by authorizing a maximum ten year sentence for escape, which must run *consecutively* to the sentence under which the inmate was originally confined. The deterrence-based rationale of § 139(a) would be considerably undermined if the General Assembly mandated that an escape sentence run *concurrently* to the sentence under which the inmate was originally confined.

The State seeks to avoid this reasoning by arguing that the escape sentence must be made to run consecutive to the time Fleeger spent in custody on his original theft charge. According to the State, Fleeger was serving a "sentence" on his original theft charge. Because this "sentence" terminated upon the entry of a nol pros on that charge on January 18, 1982, the State maintains that Fleeger's escape sentence commenced on this date. The State evidently bases its reasoning on the proposition that any period of pre-conviction custody constitutes a "sentence" within the meaning of the consecutive sentencing provision under § 139(a). We refuse to accept this fallacious reasoning. At the time of his escape on December 25, 1981, Fleeger was not serving a "sentence" on any criminal conviction because he had not been convicted on the original theft charge. As

a result, there is simply no sentence onto which Fleeger's escape sentence must be made consecutive.

The State attempts to buttress its argument by referring us to *Caparella v. State*, 214 Md. 355, 135 A.2d 311 (1957), and *Baker v. State*, 205 Md. 42, 106 A.2d 692 (1954). In particular, the State seeks succor from a passage in *Baker* to the effect that although the precursor to § 139(a) "refer[s] primarily to cases where a previous period of confinement has been fixed, ... it does not follow that the imposition of a sentence for escape from confinement ... is contingent upon a previous sentence." *Id.* at 47, 106 A.2d at 694. *Caparella* and *Baker*, however, do not support the State's argument that § 139(a)'s consecutive sentencing provision applies to Fleeger. As an initial matter, the escape statute in effect at the time of *Caparella* and *Baker* did not have a consecutive sentencing provision. Indeed, this portion of the statute was not added until 1972. Ch. 121 of the Acts of 1972. Moreover, unlike Fleeger, the appellants in both *Caparella* and *Baker* were serving indeterminate sentences at the time of their escape. We therefore fail to see how these cases support the State's argument.

█ It is clear from the above that no inconsistency exists between § 638C(a) (the sentence credit statute) and § 139(a) (the consecutive sentencing provision for escape). Both statutes serve differing purposes. Section 638C(a) seeks to reduce actual sentences by providing credit for presentence custody. In so doing, it serves the dual purpose of avoiding both dead time and banked time. Section 139(a), by comparison, precludes the sentencing authority from making an escape sentence run concurrent with a prior sentence.

We therefore hold that Fleeger is entitled to have his pre-escape custody credited against his sentence for the crime of escape.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT

TO VACATE THE SENTENCE OF THE CIRCUIT COURT FOR CECIL COUNTY AND REMAND TO THAT COURT FOR A RESENTENCING PROCEEDING NOT INCON- SISTENT WITH THIS OPINION. CECIL COUNTY TO PAY THE COSTS.