866 A.2d 918

**Anthony GILMER**

v.

**STATE of Maryland.**

**No. 787, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Jan. 28, 2005.

Amy E. Brennan (Stephen E. Harris, Public Defender, on brief), for appellant.

Devy Petterson Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, BARBERA, SHARER, JJ.

BARBERA, J.

Appellant, Anthony Gilmer, was convicted by a jury in the Circuit Court for Baltimore City of first and second degree assault.[1] After merging the latter conviction into the former, the court sentenced appellant to fifteen years' imprisonment. Appellant asks two questions on appeal, which we have slightly rephrased:

1. When trial began, appellant faced seven counts. The court granted appellant's motion for judgment of acquittal on the charge of carrying a

I. Did the trial court err in refusing to give appellant credit at sentencing for pre-trial incarceration pursuant to Maryland Code (2001), § 6–218(b) of the Criminal Procedure Article?

II. Did the trial court err in refusing to give appellant's proposed *voir dire* question, which asked: "Do you believe that evidence produced by the Defendant in his defense is less credible than evidence produced by the State?"

For the following reasons, we shall affirm the circuit court's judgment.

## FACTUAL BACKGROUND

The issues we decide require only a brief recital of the underlying facts of this case. On September 1, 2002, appellant and Jonathan Blue were pre-trial detainees at the Baltimore City Detention Center. Appellant had been incarcerated at the detention center since July 2, 2001, on an unrelated charge. Shortly after 4:00 p.m. on September 1, 2002, appellant and Blue were in the "day room" participating in "passive recreation," which includes access to the pay telephone. The two men engaged in a fist fight over whose turn it was to use the telephone. They were removed from the day room by a detention center officer, but were allowed to return a short time later. When the officer left the room, appellant attacked Blue with his fists and stabbed him with a knife in the head and neck.

## DISCUSSION

### I.

█ Appellant argues that the court erred when it refused to give him credit on his fifteen-year sentence for the time he

concealed weapon, and the State withdrew at trial the reckless endangerment charge. The jury acquitted appellant of attempted first degree murder, attempted second degree murder, and openly carrying a dangerous and deadly weapon with intent to injure. ·

was incarcerated on an unrelated charge that was eventually *nol prossed.* He argues that the court's decision runs afoul of Maryland Code (2001), § 6–218(b) of the Criminal Procedure Article.[2]

That statute in pertinent part provides:

(1) A defendant who is convicted and sentenced shall receive credit against and a reduction of the term of a definite or life sentence, or the minimum and maximum terms of an indeterminate sentence, for all time spent in the custody of a correctional facility, hospital, facility for persons with mental disorders, or other unit because of:

(i) the charge for which the sentence is imposed; or

(ii) the conduct on which the charge is based.

(2) If a defendant is in custody because [of [3]] a charge that results in a dismissal or acquittal, the time that would have been credited if a sentence had been imposed shall be credited against any sentence that is based on a charge for which a warrant or commitment was filed during that custody.

(3) In a case other than a case described in paragraph (2) of this subsection, the sentencing court may apply credit against a sentence for time spent in custody for another charge or crime.

We disagree with appellant that the court was required by this statute to give him credit on the sentence in this case for the time he served on the unrelated charge. This is because appellant's situation is controlled, not by subsection (b)(2) of the statute, but by subsection (b)(3).

There is no doubt that the unrelated charge ended in a *nolle prosequi,* and not a dismissal or acquittal. Notwithstanding

---

**2.** Hereinafter, unless otherwise indicated, all statutory references are to this Article of the Maryland Code.

**3.** When originally enacted in the Criminal Procedure Article in 2001, the word "of" was omitted from the text of § 6–218(b)(2). In 2002, the General Assembly corrected this omission in its "Annual Corrective Bill." 2002 Maryland Laws, Ch. 19 § 1.

that the mandatory credit provided by subsection (b)(2) applies only in a case "that results in a dismissal or acquittal," appellant argued that the court was required to give him credit for pre-trial incarceration from July 2, 2001, when his incarceration on the unrelated charge evidently began, until August 31, 2002, the day before he committed the instant assault. Without saying as much, appellant was equating a *nolle prosequi* to the "dismissal or acquittal" referred to in § 6–218(b)(2).

The court gave appellant sentencing credit from the date he assaulted his fellow detainee until the date of sentencing. The court disagreed with appellant, however, that it was obligated to award him credit for time he had served on the unrelated charge for which he was incarcerated at the time of the assault. The court reasoned that it had discretion whether to award such credit and, in exercising that discretion, declined to award appellant credit for any of his pre-assault incarceration.

Appellant re-raises on appeal the argument that he is entitled to the time he served on the *nol prossed* charge. He relies on the proposition recognized in *Fleeger v. State,* 301 Md. 155, 160, 482 A.2d 490 (1984), and restated more recently in *Dedo v. State,* 343 Md. 2, 9, 680 A.2d 464 (1996), that the sentence credit statute has as one of its purposes "to eliminate 'dead' time, which is time spent in custody that will not be credited to a future sentence." He argues that this purpose is given effect by treating a *nolle prosequi* as the equivalent of a dismissal or an acquittal.

*Fleeger* in particular informs our analysis of the issue. The case presented the following situation: Robert Fleeger was taken into custody on a charge of theft. He remained in custody for nearly six months awaiting trial, then escaped and stole a vehicle. He was captured and returned to jail the next day. Two weeks later, the State charged him with escape and unauthorized use of a vehicle. *Fleeger,* 301 Md. at 158, 482 A.2d 490.

Fleeger eventually entered into a plea agreement with the State whereby the State agreed to *nol pros* the pending theft charge in exchange for Fleeger's guilty plea to escape and unauthorized use. At sentencing, the court gave him credit for his post-escape, pre-sentence custody. The court, however, refused to give him credit for his pre-escape custody on the theft charge. Fleeger argued on appeal that this was error. The Court of Appeals agreed. *Id.* at 158–59, 165, 482 A.2d 490.

The Court reviewed the sentencing credit statute, which at the time was codified at Maryland Code Annotated (1957, 1982 Repl.Vol.), Article 27, § 638C,[4] and made the following observations:

[A] purpose of the credit statute is the elimination of "dead" time, which is time spent in custody that will not be credited to any valid sentence. Section 638C(a) seeks to avoid dead time by authorizing mandatory credit for any time spent in custody while awaiting trial on an offense for which the defendant is ultimately convicted. The statute also seeks to eliminate dead time that results when a defendant is in custody on one crime but is ultimately convicted of another. By enacting § 638C(a) [the precursor to § 6–218], the General Assembly sought to ensure that a defendant receive as much credit as possible for time spent in custody as is consistent with constitutional and practical considerations.

*Fleeger*, 301 Md. at 165, 482 A.2d 490 (citations omitted).

The *Fleeger* Court concluded that, in the case before it, the State's *nolle prosequi* of the theft charge was effectively a dismissal of the charge within the meaning of the statute. This was because the State was *precluded* from reinstating the original theft charge, so long as Fleeger complied with the terms of the plea agreement. 301 Md. at 162, 482 A.2d 490 (citing *State v. Brockman*, 277 Md. 687, 357 A.2d 376 (1976),

---

4. Section 638C was recodified in 2001, without substantive change, and is now found at § 6–218 of the Criminal Procedure Article. 2001 Maryland Laws, Ch. 10 § 2.

for the proposition that the State may not prosecute a defendant on charges that are *nol prossed* as part of a plea agreement because the State is "precluded from withdrawing [a] plea bargain where withdrawal is unfair or inequitable to the defendant"). *See also Magrogan v. State,* 56 Md.App. 289, 292–93, 467 A.2d 784 (1983) (holding that the State's *nolle prosequi* of a housebreaking charge as part of a plea agreement is effectively tantamount to dismissal, and therefore, Article 27, § 638C is applicable).

Standing at counterpoint to *Fleeger* and *Magrogan* is *Roberts v. State,* 56 Md.App. 562, 468 A.2d 410 (1983), *cert. denied,* 299 Md. 426, 474 A.2d 219 (1984), a case relied upon by the State. *Roberts* also involved application of the sentence credit statute. There, we held that the State's "stet" of a charge is *not* tantamount to a dismissal or an acquittal.[5] We explained:

> The statute provides for credit for time spent in custody under a charge which culminates in "dismissal or acquittal," not a stet. "A stet in Maryland is a method of placing an indictment in a state of suspended animation into which new vitality may be breathed through either prosecutorial or defense resuscitation." A stet only means that the State chooses not to prosecute the accused on that charging document at that time....

> It remains possible for [Roberts] to be prosecuted for the Baltimore City handgun violation. Since that charge is still viable and [he] remains in potential jeopardy of being tried thereon, he is not in the same position as if the charge had been dismissed or if he had been acquitted.

*Roberts,* 56 Md.App. at 565–66, 468 A.2d 410 (citations omitted).

We went on to note in *Roberts* that the purpose of the credit statute, *i.e.,* to give credit for time spent in custody when there is no other way to credit that time,

---

5. When a charge is "stetted," it is placed on the court's inactive docket subject to re-activation within one year at either party's request, or by order of court upon good cause shown if requested after one year. *See* Md. Rule 4–248.

does not exist when the first charge is merely stetted *because that charge may be eventually tried and may result in conviction and sentence.* In such case, the accused will then be credited with the time spent in custody as a result of that charge. If appellant's reading of the statute were correct, should the handgun charge ever be tried and result in a conviction and sentence, he would be entitled to receive credit for time in custody thereon against the sentence for that offense in addition to credit against the sentence that was re-imposed for violation of probation. We do not believe the General Assembly intended such a result.

*Id.* at 566–67, 468 A.2d 410 (emphasis added).

We concluded that Roberts's case fell into the category of "all other cases," for which the sentencing court has the discretion not to give credit for time spent incarcerated on the subsequently stetted charge. *Id.* at 567, 468 A.2d 410.

 Turning to this case, appellant's prior charge was not stetted, as in *Roberts*. And though the prior charge was *nol prossed*, it was not done as part of a plea bargain, as in *Fleeger* and *Magrogan*. The question, then, is whether an ordinary *nolle prosequi*, entered before trial and not tied to a plea bargain, is tantamount to a dismissal or acquittal, or is akin to a stet in that the State retains the prerogative to revitalize its prosecution of the offense by issuance of a new charging document.[6] We hold that the ordinary *nolle prosequi* is not tantamount to a dismissal or acquittal of the underlying offense and, therefore, does not fall within the meaning of § 6–218(b)(2).

The Court of Appeals in *Mason v. State*, 302 Md. 434, 488 A.2d 955 (1985), laid out the difference between an ordinary *nolle prosequi* and one that is entered in return for a guilty plea. The *Mason* Court said:

---

**6.** A stet and *nolle prosequi*, of course, differ in an important respect. In the case of a stet, the accused remains liable to be prosecuted under the stetted charge. *LaFaivre v. State*, 338 Md. 151, 158, 656 A.2d 789 (1995). As will be discussed further, this is not so in the case of a *nolle prosequi*. *Id.* at 155–56, 656 A.2d 789.

Our cases make clear that a *nolle prosequi* is a bar to any further prosecution under that charging document or count. A *nolle prosequi*, however, is not an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or different count. As Judge Eldridge explained in *Curley v. State*, [299 Md. 449, 460, 474 A.2d 502 (1984),] "[n]ormally the effect of a nol pros is as if the charge had never been brought in the first place." Thus, the State may in some circumstances reinstitute the prosecutions under a new charging document after the entry of a *nolle prosequi* on the former charging document or count.

The *nolle prosequi* has a different effect, however, when the prosecutor and defendant enter into a binding plea agreement under which the defendant enters a guilty plea in exchange for the entry of *nolle prosequi* on the remaining charges. Once the court accepts the defendant's guilty plea and the defendant complies with the terms of that agreement, the State is barred from any further prosecution on the charges so nol-prossed. In these circumstances the State cannot recharge the defendant under a new charging document or new count with any offense it previously nol-prossed. We therefore consider the *nolle prosequi*, under these circumstances, as tantamount to a dismissal of that charge.

302 Md. at 439–40, 488 A.2d 955 (citations omitted).

It is not apparent from the record in this case why the State *nol prossed* the prior charge. That, however, is of no consequence to our decision in this case. What is of consequence is that the record does not in any way suggest that the *nolle prosequi* was part of a plea bargain. The State, therefore, remains free to recharge appellant for the underlying offense. Much as we concluded in *Roberts*, the right of the State to prosecute appellant for that offense takes the *nolle prosequi* out of the realm of the dismissal or acquittal referred to in § 6–218(b)(2).

■ Our decision is in accord with the plain language of § 6–218(b). Subsection (b)(2) uses the terms dismissal and acquittal, not *nolle prosequi*. We are bound to give these terms their ordinarily understood meaning. *See Gillespie v. State*, 370 Md. 219, 222, 804 A.2d 426 (2002). Certainly, the General Assembly could have mandated that credit be given for time served on charges that result in a *nolle prosequi*. That the legislature chose not to do so when it enacted the credit provision thirty years ago, see 1974 Maryland Laws, Ch. 735 § 1, and has taken no steps since then to mandate credit for incarceration on charges that are *nol prossed* in the ordinary course (as opposed to part of a plea bargain), reflects the legislative will to limit the applicability of that subsection. Any effort on our part to overread the statute would be to venture impermissibly into territory that is under the exclusive control of the General Assembly. *See Price v. State*, 378 Md. 378, 388, 835 A.2d 1221 (2003) (" '[w]e cannot assume authority to read into the Act what the Legislature apparently deliberately left out' ") (citation omitted).

In sum, like the stet discussed in *Roberts*, a *nolle prosequi* entered before trial and not tied to a plea bargain comes within the purview, not of § 6–218(b)(2), but of subsection (b)(3), because it is "a case other than a case described in paragraph (2) of this subsection." In that instance, subsection (b)(3) gives the court discretion to "apply credit against a sentence for time spent in custody for another charge or crime."

Here, the sentencing court exercised its discretion not to award appellant credit for the time he was incarcerated on the *nol prossed* charged. Appellant suggests no abuse of discretion in this regard, and we find none. We shall not disturb that sentencing decision.

## II.

Appellant argues that the trial court erred in refusing to pose the following question during *voir dire:* "Do you believe that evidence produced by the Defendant in his defense is less

credible than evidence produced by the State?" Appellant has foregone the opportunity to raise this complaint now. Even so, it is without merit.

During its initial *voir dire* of the prospective jurors, the trial court asked them, among other things, whether anyone would give more weight to the testimony of a police officer merely because of that person's occupation; whether anyone had any religious, moral or philosophical reason why he or she could not sit in judgment of another; and whether anyone would be unable to render a fair and impartial verdict for any reason the court had not mentioned. The trial court completed this portion of the *voir dire*, then asked the parties to approach the bench.

There, defense counsel asked the trial court to pose the question we have quoted above. To this the court responded, "Your exception is noted for the record, but [I] decline to ask the question *as stated.*" (Emphasis added.)

The court later posed to the prospective jurors the following additional *voir dire* question: "Is there anyone here that has prejudged the evidence, that is as to what the [S]tate may give or the defense may give as to what is credible without hearing it in this case? If so, please stand." The court noted for the record that no response was given to the question.

The trial court then asked the prospective jurors whether they had any known bias that might affect their ability to render a fair and impartial verdict. The record reflects that only one prospective juror (who was not ultimately selected) responded to the question.

Shortly thereafter, the trial court again asked the parties to approach the bench. When the court asked appellant's counsel whether he had anything further to add, counsel responded that he did not.

■ On this record, appellant has waived any challenge to the court's refusal to propound his requested *voir dire* question. He did not challenge the question the court subsequently asked, which captured the essence of the question he

requested. When later asked by the court whether he had anything to add, appellant stood silent, evincing his satisfaction with the question the court posed. Under these circumstances, appellant cannot now complain about the court's refusal to ask the exact question he requested. *See Gilliam v. State*, 331 Md. 651, 691, 629 A.2d 685 (1993) ("As Gilliam did not object to the course of action proposed by the prosecution and taken by the court, and apparently indicated his agreement with it, he cannot now be heard to complain that the court's action was wrong."), *cert. denied*, 510 U.S. 1077, 114 S.Ct. 891, 127 L.Ed.2d 84 (1994).

Even had the issue been preserved, appellant would fare no better. The Sixth and Fourteenth Amendments of the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee that all persons accused of a crime are entitled as a matter of right to be tried by a fair and impartial jury. *See, e.g., Jenkins v. State*, 375 Md. 284, 299, 825 A.2d 1008 (2003). This constitutional right is protected, among other ways, through questions asked during *voir dire*, "which are aimed at discovering cause for juror disqualification." *Id.* The proper focus of *voir dire*, then, "is on the venire person's state of mind, and whether there is some bias, prejudice, or preconception." *Davis v. State*, 333 Md. 27, 37, 633 A.2d 867 (1993).

A trial court enjoys considerable discretion in its management of *voir dire*, including the scope and specific wording of the questions asked. *Id.* at 34, 633 A.2d 867. Because there is no precise rule prescribing the questions which should be asked, the subject is left largely to the sound discretion of the trial court. *Id.* Relevant to the determination of whether the trial court has exercised proper discretion is whether the proposed question was adequately covered by those questions that were asked. *See Miles v. State*, 88 Md.App. 360, 381, 594 A.2d 1208, *cert. denied*, 325 Md. 94, 599 A.2d 447 (1991).

Here, the questions asked by the trial court, including those given in the court's supplemental *voir dire*, adequately cov-

ered any bias appellant attempted to uncover in his proposed question. Therefore, even had appellant's complaint been properly before us, we are persuaded that it would have failed on its merits. The trial court did not abuse its discretion in declining to ask the exact question requested by appellant and asking, instead, a differently phrased question that achieved the same goal.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**